It's Gartner v. Noel and it's 513-407. Now your turn. Thank you. I forgot that. Sorry about that. The plaintiff, who is the appellee, seeks to take the land from his neighbor by claim of adverse possession. The plaintiff filed his complaint in this case on August 31, 2011, to acquire a title to his ownership of a portion of defendant's land by the doctrine of adverse possession. On October 13, 2011, defendants filed their answer in their counterclaim to acquire a title and confirm their ownership of a portion of plaintiff's land by adverse possession. So we have two pieces of land in question. One that the defendants are claiming, owned by the plaintiff, and one that the plaintiff is claiming, owned by the defendants. And I have on the board the survey of the land that was entered into evidence in the case of plaintiff's Exhibit 17. Now Bill, would you help me move that closer so we can see it? Let's move it forward so we can see it. If I can approach that. Sure. I have a copy of a portion of that.  Yes. Do you have a copy, counsel? I will pass it along. We have an extra one for counsel. Perfect. But it's a copy of a portion of the survey that you wrote. And if you refer to that, you'll see to the left, Tracts 1 and 2. Now one question. Was this admitted into evidence? What's that, Your Honor? Was this admitted into evidence? Yes, this was. Okay. This is just a copy of a portion of that. Any problem. You may proceed. And we, during the trial, neither the plaintiff nor the defendant had any questions about this survey. No controversy. If you look on the exhibit before you, Tracts 1 and 2, you see to the left, those are owned by the defendant, my client. And north of that, there's an area that's kind of blank here, but it's a much larger area. And that is also owned by the defendant. And then you see the dark line that runs to the south and along the south line of Tract 2, east and west. North is the top of the plat. That line is the D line. And the tract that's just below that between the Tract 2 and the railroad has the numbers 4437 and 2517 in the middle of it. That is the plaintiff's lane. And over to the right, in kind of an oval shape, you'll see where the surveyor has enlarged the area of the encroachments. And that covers almost all of the claimed land in question in this case. Honorable Trial Judge Barbara Crowder entered into order April 25, 2013, confirming, first, plaintiff's title to a certain fenced portion of defendant's land. And that would be, if you're looking on the area of encroachments in that oval, you'll see what's marked as occupation line and fence corner on both sides. It would be the area inside that fence. And then also, the trial judge's order included a three-foot strip to the north and immediately adjacent to that fence or occupation line. And that, the trial judge awarded to the plaintiff. And then secondly, the trial judge awarded title to, and you have to look over to the left now, but you'll see the fence line makes a right angle and goes south down to the railroad. And there's a strip of ground in there which the surveyor has marked or designated occupation line, that's the fence. And then the deed line is that dark line running north and south just to the west or left. And there's a strip of ground in there, and the trial judge awarded that to the defendant. Then, except for a three-foot strip of it along the fence. Mr. Gibbons, if that, is that actually the deed line? The dark line is the deed line, and that's the deed line of the plaintiff's property. And so, that strip of the plaintiff's land was awarded to the defendants. And the strip on the north of the defendant's land was awarded to the plaintiffs. Except for this three-foot strip in the case of the, in both cases. There's one three-foot strip on the north, immediately north of the fence was awarded by the trial judge to the plaintiff. But now the, from the deed line to the fence line, was that awarded to the defendants? Is that what you're saying? Along the west, north to south, down to the railroad, that strip of ground between the fence and the deed line of the plaintiff was awarded to the defendant. Okay. Except for that three-foot strip along the fence. Now you have me confused. What's the difference, what is the distance between the deed line and the fence on the north-south border? If you look over to the right, to the area of encroachments, you'll see just a little portion of that north-south fence over there on the left side of that oval. And it says 46 feet plus or minus. That's approximately the width. It's not an absolutely rectangular strip, but it's approximately the width up and down. So there were those two strips. Now, there's no controversy anymore about the awarding of those strips, and it's not one of the issues in this opinion. Both the defendant and the plaintiff agreed that there was a 20-year occupancy and adverse possession of those strips along the fences, enclosed by the fences or divided by the fences. So that part is not an issue. The only part that is an issue is those three-foot strips outside the fence that the trial judge feels did award to the plaintiff. Then there's also a kind of a webbed shape, if you look again over to the right area of encroachments. If you take that fence corner in the middle of that drawing, of that section of the drawing, it's marked fence corner with an arrow, it's right next to the concrete. If you take and go three feet north of that fence corner and then draw a straight line in the same direction as the fence, all the way out to the east or right, there you come up to the old carpenter road. The old carpenter road runs north and south. Along the east side are both the plaintiff's and the defendant's land. So there's a wedge of ground in there some 246 feet approximately. Down at the bottom it's marked 267, but at the top it may be narrower. The point is that there's a wedge of land there that the trial judge awarded to the plaintiff's, the defendant's land. And on that area of encroachments you'll see a block shed, which the majority of it is in the south or plaintiff's land, but 7.7 feet of it sticks up into and encroaches into the defendant's land. Also over there, along that fence on the left, you see concrete identifying and you see a garage. And both of those encroach, they're largely on the plaintiff's land, but they encroach upon the defendant's land. Now the block shed, neither party disputes the fact that that block shed has been there for 20 years. Defendants have no problem with the trial judge's award of that block shed area or the land underlying that. However, the judge awarded a much larger wedge of land there, encompassing the concrete and the garage, which the defendants strongly disagree should be awarded by adverse possession. Now is there any objection to the concrete or is that agreed upon?  Okay, so you're talking about the piece between the north east corner of the concrete to the northwest corner of the garage? No, it goes from, if you take and you look at the fence corner there to the left of the concrete and you go three feet north of that fence corner, the judge awarded a three foot strip there, three foot distance, and then drew a line on the same course as the occupation line of the fence, drew that line all the way east out to the old carpenter road and awarded that part of the defendant's land to the plaintiffs. At the time that the survey was made, there was also a portable shed that was across the line that was a portable shed that was largely, it was owned by a plaintiff and was largely on the plaintiff's land, but some of that not being shown on here because it was portable and not a mine, and it was slightly a few feet over the line and encroached upon the defendant's property. And that was between the concrete pad and the block shed? Yes, Your Honor. But that portable building was only on the property a few years, much less than 20 years. So it did not meet the 20 year requirement of the heifer's possession. And the concrete and the garage encroachments are the same way. They, again, were only encroaching for a few years, much less than 20 years. The dates and so on, I can't remember, but they're in the pleadings. But they were much less than 20 years. Now, the block shed, as I said before, there's no controversy there that both sides agree has been on an encroachment over 20 years. Well, I'm having trouble with the property between the concrete pad and the garage. Is that line behind the concrete pad or is it a continuation of the edge of the concrete pad? It would be north of the concrete pad a few feet. A few feet, okay. Yes. That's not shown on here. Well, no, because the surveyor did not find any monuments there. He did not find any indications there that he would call occupation lines. I get it. That particular line was established at the request of the plaintiff. The surveyor actually wrote the description of that line, that claimed line, at the request, and there's testimony. In fact, I want to read it to you because I think it's important. The surveyor testified that. The line was, quote, just a line that he, Mr. Gardner, plaintiff, asked me to draw on this exhibit, close quote. And then he also testified that, open quote, this is a proposed line that Mr. Gardner, the plaintiff, had me draw, close quote. Those were the only references and the only testimony of the surveyor with regard to that line. So that line does not, and he testified also that he found no monuments along that line. Counsel, I'm sorry, tell me again, which line are you referring to? This is an imaginary line, Your Honor. Is it reflected here on this? No, it is not. It is not because it is not found by the surveyor. It was created at the request of the plaintiff and at his direction, and the surveyor created a legal description that included that line. And that is the legal description that the trial judge included in her order. She ordered that that property was to be transferred by adverse possession to the plaintiff. And that correlates with the evidence, the testimony regarding that portion of Fayette Mowed?  Where they came up with that line relates to the testimony, the evidence where the plaintiff's had mowed. But there is no evidence that that line actually represents the mow line. The surveyor did not testify to that. The witnesses of the plaintiff testified that anywhere from 10 to 25 feet where that mow line was north of that block shed, 10 to 25 feet. One witness, Marla Gartner, testified, I would say 20 feet. Vicki Hamlin testified 10 to 15 feet. Audrey Baser testified 15 to 20 feet. Ken Jones testified a good 20, 25 feet as to where that line was. But the testimony and all the testimony in this trial, there were no monuments along that line. There were no trees planted along that line. There were no shrubs planted along that line. It was only mowed occasionally when my clients, when my clients, the defendants, were not harmed. So that line is a imaginary line today. There's no fence on that line. If you read the judge's order, it implies, and I think it says that the judge is awarding that wedge of land based upon a fence all the way out to the road. But the fence, as you can see on this exhibit, the fence stops some 267 feet west of the road, right up there to the west of the concrete, right alongside the concrete. There's no more fence to the east of that. And there's no testimony that there ever was a fence. And there's no testimony that there ever was any monuments along that line. There's no testimony that there were any shrubs planted. There was no testimony that there were any trees planted. There is nothing to identify that line except this testimony of what the plaintiff calls his mow line, somewhere between 10 and 25 feet from the block shed. Now let me get this straight. There's a counterclaim for adverse possession for this line by the fence. Is that correct or not correct? The counterclaim, of course, in our answer we deny the plaintiff's adverse possession. But the counterclaim is for the property over on the west that lies between the fence, that strip going north and south down to the railroad. Right. That's what the counterclaim is. You can continue because you waived the next case. Oh, you got a little time. So the acreage involved here, probably the defendant is ending up with more acreage than the plaintiff on the adverse possession. Yeah, but there's testimony that that's rough land that goes down a hill. It's not as valuable, perhaps, as the land. But there's no testimony as to value in this case. There is no testimony as to the value relatively of the two strips. But the Supreme Court in the long line of cases and some cases in this particular court. I've always ruled that it's a requirement that a claim for adverse possession has to prove. The exclusivity of the possession, that is that the other parties are excluded from the land. That was not done in this case. My clients were farming that land part of the time in their testimony. And there was no exclusion. And the plaintiff's claim has to prove that there was a claim of title. And there is ample evidence and testimony that the plaintiff never claimed title to anybody. Not to the neighbors, not to my clients. The owners never claimed that they owned that strip until they filed their case. In fact, it doesn't probably make any difference here legally, but they tried to buy it from my clients. And my clients refused to sell it to them. Thank you, counsel. I think we understand. Thank you, Your Honor. Do you have any further questions? No. Appellee. Good morning, Your Honors. My name is Jane Oselan. I represent the appellee, Larry Gardner. Just by way of clarifying, there were some disputes in the briefs as to the standard of review in this case. And I believe that it's clear since the appellant has filed his response brief that there's no disagreement that the standard of review was manifest way to the evidence. So in this case, the trial court should only be overturned if, in fact, an opposite conclusion is clearly evident. The trial court's ruling was unreasonable, arbitrary, or not based on the evidence. And I believe here, Your Honors, that the trial court's order was, in fact, based upon the evidence. I believe that the trial court assessed the evidence, assessed the credibility of the witnesses, and made the decision based upon the evidence. We're quite clear that the plaintiff obviously had the burden of proof. We have a burden of proof that has to be clear and unequivocal as to all elements of adverse possession. And we believe that we've proved all of them. And I think it's important here to take a look at the facts because I think that's what convinced the trial court here, that the plaintiff should, in fact, be awarded adverse possession and the defendant, conversely, be awarded adverse possession as to the West property. Just by way of history, my client, the plaintiff, purchased this property, which is a wedge-shaped piece of property, as you can see on the diagram that counsel provided to you. The smallest part of the wedge touches Carpenter Road. He purchased it contract for deed back in 1982, moved on to the property immediately. In 1983, he put up an electric strand fence from a fence post that was already on the property. Now, as you stand and you look west from Carpenter Road, when he purchased the property, the gentleman that he purchased it from told him, your line for your property is, in fact, 20 feet to the north of that block shed that everybody agrees was there. The property was not surveyed. Now, was that admitted into evidence somehow? Yes. Harold Hammond testified that he told my client that. Your property line is 20 feet to the north of that. So if you look straight west, your property line runs 20 feet to the north of that block shed. My client accepted that. There was no survey. The legal description that he was given in his deed, obviously, was not 20 feet to the north of that block shed. It actually went through the block shed. Okay, what about the judgment? Did it go north of that 20 feet or not? The judgment in the trial court? Yes. No. How far did it go north? What the trial court did is there's the fence that was there, and there's no dispute the fence was there for more than 20 years. How far is the fence from the block shed? The fence is somewhere around 200 feet. It starts toward the back of the property. From the back of the shed to the fence, how far is that? That's probably about 200 feet. If you look on the diagram that is in the area of encroachments, if you see where it says block shed and you go back to where it says concrete, you can actually see the fence line that is just the corner of the fence line is right behind the concrete. It's a little easier to see on the large area of encroachment. It looks to me like the shed is south of the concrete. The shed is actually east of the concrete. I know it's east, but the back of the shed looks like it's a little bit to the south. It is a little bit to the south of the concrete. You're saying that the description in the judgment is 200 feet north of the back of the shed? No. I thought your question was what's the distance between the block shed and the concrete? How far north does it go behind the block shed or does it go to the back of the block shed? The judgment awarded my client from Carpenter Road approximately 20 feet to the north of the block shed, straight west all the way to the fence corner at the end of that edge of encroachment. It actually awarded my client three feet to the north of the fence. Three feet to the north of that fence? Yes. I'm getting confused with the other fence. The fence that I'm talking about is the fences on the north side of the property, and it really only covers about half of the length of the property. But the testimony was that the fence post was there when my client moved in. He used that fence post, put up a fence, and replaced the fence at least two different times during the time that he occupied the property. But factually, what I think is important is that my client moves in in 1982. The block shed's there. He's told that his property line is actually 20 feet north of that block shed and straight out west to the end of the fence line. He installs a fence. He replaces the fence. This is starting in 1982. He lives there. His first fence is an electric strand fence. By 1991, he replaces it with a woven wire fence. Now, the defendants, the Knowles, they got their deed in 1989. They began farming the property to the north of my client's property. And I think it's important here in terms of adverse possession that we're talking about pretty large tracts of property. This isn't a town where we're talking about a foot or two that deprives someone of a driveway. My client's tract is five acres, and the plaintiffs own actually an L-shaped piece of property that is to the north of my client's property and actually comes around to the west of it. And their property is somewhere between 50 to 100 acres that they own. At any rate, fact-wise, my client moves in. He establishes the fence line. He establishes a mow line that is actually three feet to the north of that fence line. He mows it. He maintains it. He weeds it. He seeds it. And that three feet to the north of the fence line, taking that line straight forward to Carpenter Road, that's what the trial court awarded my client by adverse possession. And it's an approximate .44 acres. Now, when the fence was put in on the back of my client's property, he actually fenced, did not fence his entire property. There's some acreage back there that the defendants assumed that they owned, and the trial court awarded them adverse possession to about .59 acres of that property. And when you say the back of your client's property, you mean the west? The west, exactly. Yes. Now, what the trial court did is she said, I'm going to award you three feet outside that west fence line because there was testimony that my client used that three feet to maintain the weeds, to cut them, to maintain the fence. And then when you turn the corner, and on the north side of my client's property, the fence line, she awarded him three feet outside the fence line because he had mowed, he had maintained it, he had weeded it, he had seeded it. He had, in fact, used that property to replace the fence three times. Then she took that line, which was three feet to the north of the fence, and extended it out to Carpenter Road, which gave my client almost 20 feet to the north of that block shed, which is where he was told his property line was. That property, that line that she gave to him is what is being called as the mow line. There's a lot of testimony from not only my client and his wife and his son that he mowed that property, and the mow line extended out 20 feet from the block shed and went down along the fence line three feet outside the fence line. There are also independent neighbors. We brought in six people who live in the community, and they said, yes, in fact, we could see that Mr. Gardner at least believed he owned that property because his mow line was to the north of the shed. Now, counsel makes a big deal out of the fact that some of those neighbors gave approximations of the mow line. You have two of the ladies who were just driving by. One testified 10 to 15 feet. The other testified 15 to 20 feet. I think the court took into consideration that someone driving by a piece of property, especially when you've got a field that's at least 15 acres on one side, that you might not be exact as far as exactly the distance the mow line was from the block shed if you're talking about a few feet. So there were two ladies who testified that they thought it was an approximate 10 to 15 or 15 to 20 feet. Was the testimony of your clients and their son consistent on the distance from the block shed? It was, Your Honor. It was 20 feet from the block shed. In fact, my client's son said he measured it. There was actually another neighbor boy who had actually mowed when he was younger. My client lived there since 1982. He actually testified that the mow line was 3 feet to the north of the fence, and it continued out and was 20 feet from the shed. So my client's testimony was consistent, and the neighbors were certainly consistent that we were mowing out away from that block shed. As I said, a couple of estimates, 10 to 15, 15 to 20, but the other four independents testified 20, and one gentleman said I think maybe 25. But I think it's reasonable, and the trial court assumed this, that those people, their neighbors, they're not going to go out and measure it. But the approximations are based upon what they saw. Clearly, my client was occupying this property, and he wasn't just mowing it. What he did is that block shed has a well in it, and he used the water from that well. He whelked puppies in it. He put a garden in this area between the block shed and the concrete back by where the garage is now. Interestingly enough, and I think the trial court was very much persuaded by this, Harold Hammond sold the property to my client. He's the one who said, look, your line is 20 feet to the north of the block shed. He testified that he told the defendants the very same thing. When they bought their property in 1988, he said he told them that their property line was 20 feet to the north of that block shed. And the defendants from 1988 up until January of 2011, when they had a survey done, they acted as if that property belonged to my client. Now, their testimony was different, but if you look at what the facts were in the case, it's clearly that they believe that my client owned that. My client puts a portable shed that extends out past the block shed. He puts that up in 2008, never a question. In 2009, he begins, in January of 2009, he begins putting in the concrete in this huge garage. No, no question, no question at all. The nobles never approached him. It wasn't until January of 2011, when they had a survey done, that they began to say, oh, wait a minute, that's our property. And the only reason they had the survey done was because they wanted to divide up part of their property for their daughters to build houses back there. So they didn't even do it because they questioned that my client owned it. They did it for other purposes. All of a sudden, they realized, oh, my gosh, we have a deed line that goes through this gentleman's garage. And that's when they began demanding, move your garage, move your shed, tear out the concrete. So I think the facts are very, very important here. The court, in my opinion, the lower court, looked at the witnesses, the neighbors, and their testimony with regard to the fact that my client openly occupied this property for well over 20 years. He had gardens. He trained his dogs. He whelked puppies. He used the well. And counsel suggested the line that's drawn, the legal description that was put into the order that there's no basis for it. Actually, it's based upon the testimony. The testimony was that my client had a mow line that was 20 feet out from the north side of that block shed and went down three feet to the outside of the fence. That legal description, he's correct. We asked the surveyor to provide a set so that we could give it to the court so that she could have something to base her award of adverse possession. Concurrently, she awarded adverse possession to that back .59 acres to the defendants. They cultivated that for since they moved in or bought the property in 1988. They cultivated it. They planted crops. They reaped the benefits. And they used it as their own. And we have no problem with that judgment of an adverse possession. On the other hand, on the north side, where we actually maintained, cultivated, used the property, built on it, and were open and obvious in our possession, we believe that this court should uphold the trial court's decision. And, in fact, we are entitled to adverse possession. What the appellant wants you to do here is he wants you to order that the fence line we get, just because there's a fence, but there's no case law that says we have to have a fence. Other things can indicate adverse possession. But at the end of the fence, he wants this court to order my clients to tear out half their garage, tear out their concrete, which he did not object to for at least two years because he thought that we actually owned it. He wants you to believe that, in fact, he actually mowed between that fence line, indented, came back out, and mowed along that block shed. About two and a half feet from the block shed was, I believe, his testimony. No one else testified that he cultivated or mowed within two and a half feet of that block shed. In fact, block shed, if you look at some of the pictures, sits up. There's a swale that comes up to the block shed. To get heavy farm equipment in there and mow within two and a half feet of that block shed is nearly impossible. And I think his testimony was not credible. There is – there were actually witnesses who testified that that mow line was 20 feet to the north. And they are independent people who live in the neighborhood who drove by there all the time. Part of the argument that the appellant wants to make here is he wants to say, well, we only farm this property. We can't be entrusted with going by there every day to look and see what the plaintiff was doing. But, Your Honors, the defendants live down the street. They live right there on Carpenter Road in Madison County. And in order to get to Highway 140, the biggest state highway, they have to pass that property to get to the main highway. So the suggestion that they didn't know what was going on did not sit well, I don't believe, with the court. I believe, based on the testimony of all the witnesses together, this court believed that we had, in fact, occupied openly for a period of over 20 years. Thank you, counsel. Rebuttal? Mr. Gibbons, let me start with a question for you, if I might. Sure, sure. Do you concur that our standard of review is manifest way to the evidence and not the no vote? No, Your Honor, because particularly because there is no evidence supporting the legal description that the trial judge used to transfer this property where there's supposed to have been a mow line. There is no evidence at all that that legal description is the same as the mow line. There is no evidence of any kind. And so to say that the judge's order is correct, there's no supporting evidence, none whatsoever. Also, I think that the situation here is that there are several of the Supreme Court rules that have not been met by the plaintiff, the rules for adverse possession. For example, the exclusivity. There is testimony by the tenant farmer who farmed this thing for a number of years for my clients. There is testimony that he farmed up within six feet of that block chain. There is testimony by the prior owner. By the way, there were three prior owners. It was a partnership. Mr. Hammond, that my opponent is talking about, was one of the three. But there is testimony by one of the other three that he farmed within six feet of that block chain. And there is testimony that he showed the plaintiff where this property line was, and he showed where it was, was running through the rock shed, not 20 feet north of it. And so we have conflicting testimony. And, yes, I'm sure that the judge can decide whether who to believe here. But the point is it's not clear and not obvious that the Supreme Court says we have to give weight to the defendant in this case, the property owner, where there is a question. Let me go back and ask a follow-up question to your first statement that there is no evidence in the case to support this property line. I thought that the plaintiffs asked for the surveyor to draw a line based upon the mow line, and the surveyor came up with a legal description, and that's what the court adopted. No, Your Honor, that is not what happened. There is no testimony, there is no evidence that the surveyor considered the mow line. All he did was he was told by the plaintiff, make me a line that is three feet north of that fence on the west side there and run that all the way out to the road, nothing about 20 feet. And at the trial, the surveyor testified as to that. He testified, but he did not testify. And remember, the burden of proof is on the plaintiff here. He testified that that's the only way he drew that line. He did not testify that it was not the mow line. That was not asked of him. He didn't testify anything about the mow line. And remember, this fence that we're talking about is not in this wedge of ground that we're talking about that's where the well house is. I think my opponent was throwing you some red herrings because she was justifying the trial court's decision here based upon things that happened in the well house, like wealthy puppies are using a well. The block shed is the well house. That's the red herring because we don't disagree that the footprint of that well house has been there for 20 years. But none of this other stuff has been there for 20 years, and there hasn't been sufficient occupancy. There hasn't been any claim of ownership. There hasn't been anything planned along that line. In all the cases that my client, that my opponent has cited in her briefs, every one of those, the court has required a clear, distinct line for adverse possession. It doesn't exist. Thank you. Thank you, counsel. In case you'll be taken unadvised, will you receive it? Thank you. Of course.